*230 REPORT OF COMMITTEE ON PRIVILEGES AND ELECTIONS.
In Assembly, February 13, 1850.
. Mr. Dinning, from tlie committee on privileges and elections, to which was referred the petition of Daniel T. Dnrland, claiming the seat occupied by Daniel Fullerton on the floor of this House, reported as follows, to wit-:
Report of the Committee on Privileges and Elections on the Petition óf Daniel T. Durland, claiming a seat as Member of Assembly froM the Third Assembly District of the county of Orange.
The committee on privileges and elections, to which was referred the petition of Daniel T. Dnrland, .claiming a seat in the Assembly as member from the third Assembly district of the county of Orange, now held by Daniel Fullerton, report:
That the parties have appeared before your committee in person and by their respective counsel. That the petition in substance alleges that the said Daniel T. Durland received the greatest number of votes cast for member of Assembly at the last general election in the third Assembly district of the county of Orange, but that the board of county canvassers illegally and improperly rejected the return made by the inspectors of election for the third election district of the town of Minisink, and certified that Daniel -Fullerton had been duly elected such member.
In support of the petition, Mr. Durland produced in evidence before your committee certified copies of the return of the county canvassers of the county of Orange, and of the return of the inspectors of election for the third election district of the town of Minisink, which are hereto annexed, and marked Exhibits A and B, respectively.
It was then admitted by Mr. Fullerton that the certificate of election, as given to him by the board of county canvassers, shows that he received a majority of ninety-six votes, and that the board of county canvassers rejected the returns from the said third election district of the town of Minisink, in which Mr. Durland received one hundred and sixty-two votes and Mr. Fullerton fifty-nine votes. And further, that if the return last mentioned had been received and allowed by the board of county canvassers, Mr. Durland would have received a majority of seven votes in the third Assembly district of the county of'Orange.
*231 Mr. Fullerton then submitted the following answer to the petition, viz.:
In THE MATTER OF THE CONTESTED ELECTION OF DANIEL FULLERTON AS A MEMBER OF ASSEMBLY.
I shall insist, in support of my right to the seat now held by me in the Assembly, upon the following points: *
I. That the certificate of the county canvassers is conclusive upon the’question of my right to a seat, unless it shall be made to appear that the said board of canvassers were guilty of fraud or corruption in giving such certificate.
II. If it shall be held that the House can properly look beyond or' behind such certificate, that I will insist that the returns of the inspectors of the third election district of the town of Minisink were legally and properly rejected by the board of county canvassers; and if it shall be found that tlio county canvassers did legally and properly reject said returns, that that is conclusive upon the question.
III. If it shall be held that the House can look beyond this decision and the ground upon which it was made, then I shall insist that the returns of said third election district were and should be rejected upon the following grounds:
1st. Because the poll of said election in said district was held open after sunset of the day of election, and votes were irregularly received b}7 the inspectors of said district after sunset.
2d. Because the votes of the said district were illegally canvassed; persons, not being inspectors of said election district, being permitted to canvass, and to assist to canvass, a portion of the votes cast at the said election in said district.
IV. I shall insist that more than seven illegal votes were given for Mr Durland in the said third Assembly district'of the county of Orange.
V. I shall insist that two or more votes, cast for me in the first election district of the town of Minisink, were, by mistake of the inspectors, put in the wrong box, and were destroyed, - and not allowed as canvassed to me in said district; and that two votes, cast for me in said district, were illegally drawn from the ballot-box, and destroyed before the canvass of said votes, and that they were not canvassed or allowed to me by the said inspectors.
Lastly. I shall insist that I received a majority of the legal votes cast in the third Assembly district of the county of Orange.
*232 The effect of the first point taken by Mr. Fullerton, if sustained, would be to divest this House of the jurisdiction over the “ election returns and qualifications of its own members,” expressly conferred upon it by the Constitution, and t'o transfer it to a local board whose functions are solely of a ministe.,ai character, and your committee had no hesitation in pronouncing it untenable.
The second point, claiming that the returns frorq the third election district of Minisink wore legally and properly rejected by the county canvassers, evidently refers to matters appearing on the face of the return, and was so-presented to your committee.
The only defects pointed out on the face of the returns, are stated ,in .the supplementary certificates of the inspectors indorsed upon the return :
1. That the State and judiciary tickets attached were not the regular tickets voted at the election, but were attached through mistake.
2. That one of the Assembly ballots, is wanting.
It was undoubtedly the duty of the inspectors to attach such ballots as were voted, but your committee have uo doubt, that the statute is in that respect directory only, and that the omission to comply with it constitutes one of that class of irregularities which do not affect the merits and never vitiate a whole proceeding. It could not be endured that a mere clerical error should in effect disfranchise a whole district.
■ In regard to the fourth allegation of Mr. Fullerton, viz.: That more than seven illegal votes were given in the said district for Mr. Dur-ian d in the said district, it was objected on the part of Mr. Dnrland:
1. That it was hot competent for the committee, under the precedents'established by this House, to take testimony as to any matter back of the ballot-box.
2. That the allegation was defective in not specifying the names of the votes charged to have been illegal.
It cannot be denied that the practice of this House in all the recent cases is unfavorable to going behind the ballot-box, but actuated by a desire to avoid all cause or occasion of complaint from any quarter, your committee preferred to adopt the rule which prevails in Congress, and permit such evidence to be taken by both parties, upon condition that lists of the votes charged to be illegal should he served a reasonable time beforé the taking of the testimony.
*233 Oil tlie 14th of January, a resolution was passed by the House giving power to the committee to send for persons and papers, and authorizing the chairman and secretary of' the committee to proceed to the county of Orange to take testimony.
The committee appointed Friday, the 25th of January, for the taking of such testimony at Port Jervis, and directed that Mr. Fullerton serve on Mr. Durland a list of the voters claimed by him to hare roted illegally, by Monday, the 21st; and that a like notice be given by Mr. Durland, if he should wish to introduce similar testimony.
The taking of testimony was adjourned over, and not proceeded in until the 31st of January, when Mr. Fullerton offered to produce evidence of illegal voting. It appearing, however, that the notice directed by the committee had not been given, and objections having been taken on that ground, he was not allowed to produce it.
The chairman and secretary only being present, did not think proper to make any new order without the concurrence of the other members of the committee, and laid the matter over until their return to Albany, and proceeded to take the evidence to the other points in the case. The depositions containing said evidence, are hereto annexed. On the Ith instant, a meeting of the committee was held, at which Mr. Fullerton attended, and after some informal conversation, it was adjourned until the following day, to enable Mr. Fullerton to make an application in proper form.
At the adjourned meeting, Mr. Fullerton presented the written request, which is hereto annexed, but it appearing that the notice had not yet been served upon Mr. Durland, and no affidavits having been submitted to excuse the delay, your committee felt it to be their duty to deny the request, and to report to the House upon the testi'mony already taken.
This testimony was confined to three points, viz. :
1.. The keeping of the poll open after sunset in the 3d district of Minisink.
2. The alleged canvassing of votes in that district by unauthorized persons.
3. The omission to allow Mr. Fullerton certain votes said to have been given for him in the first election district of Minisink.-
One witness was examined in relation to a removal of ballot-boxes in the third district of Minisink during the canvass, but the point Avas not taken in the allegations, and the testimony elicited is unimportant. The deposition is annexed.
*234 In regard to the keeping of the poll open after sunset, your committee would, in the first place, remark, that the statute does not require that the poll slionld he closed at sunset, hut only that it should be kept open until then. It follows, therefore, that if exception can be taken at' all to the keeping of the poll open to a later hour (which your committee' very much doubt), that it cannot be taken without showing some act on the part of the authorities by which voters were in fact misled and prevented from casting their votes while the opportunity was corruptly afforded to others.
Ho such evidence has been produced. It appears that the room in which the poll was held was badly lighted, and faced the east, and that the day was dark and rainy. Only one witness, John Whiting, believes that it was kept open after sunset. The other witnesses are confident it was closed about sunset. Samuel Slawson, one of the clerks of the poll, who was examined on the part of Mr. Fullerton, says that it closed not far from five o’clock, and that there were two or three timepieces at the board which differed. It is stated by some of the witnesses, and contradicted by none, that Isaac P. King was the last who voted, and that he voted from ten to twenty minutes before the poll closed; and Mr. King, in his deposition, states his belief that when he voted the sun was fifteen or twenty minutes high.
In regard to the canvassing of votes by unauthorized persons, the testimony is more conflicting. -
It appears that the canvass was coiidncted in the following manner: When the tickets were emptied from the ballot-box they were divided into three parcels. Each inspector counted one parcel without opening it, and the sum of these counts was compared with the poll lists.
Each inspector then opened the tickets before him, separated those given for the different candidates, counted and gave in his count to the clerks without having it revised by any other inspector.
Mr. Whiting, one of the inspectors, is said to have been assisted by Mr. Stewart T. Durland, a brother of the contestant; and two of the witnesses produced by Mr. Fullerton, B. Myers and S. T. Bodle, swear very positively that a part of the tickets which fell to Mr. Whiting’s share were counted by Durland only, and the number given to the clerks from his count.
Stephen Moore, another witness produced on the same side, at first testified to the same effect, but afterward said that he could not tell whether. Mr. Whiting counted after Durland or not; he did not *235 remember about it, and also expressed the opinion that the tickets which Durland counted liad been opened by Mr. Whiting before Durland’s arrival.
. Mr. Smith, one of the other inspector's, saw Durland counting, but could not say whether the same tickets were counted by Whiting previously or not, but he thinks they had been.
Mr. Seybolt, the remaining inspector, and Mr. Slawson, one of the clerks, were also examined on the part of Mr. Fullerton, but were unable to say anything in relation to the matter, and were not cross-examined.
On the other side Mr. Durland produced John Whiting, the inspector; Stewart T. Durland and Lewis Armstrong,'the other clerk of the poll, who unite in saying'that the tickets were all counted by Mr. Whiting, as well as by Mr. Durland. The tickets which fell to Mr. Whiting’s share were counted in several distinct parcels (or bunches as some of the witnesses term'them), and in relation to one of these parcels, Mr. Whiting states* that after counting it, he felt confident that he had made a mistake of one in his count, and handed the tickets to Durland with a request to count them over, and on his doing so and finding that Whiting had made the mistake which he suspected, the latter did not again count them, but gave in the number so found to the clerks.
These witnesses also mention that Mr. Stewart Durland in his count, found a ticket from which Mr. Daniel T. Durland’s name had been erased with a led pencil, and the name of Gideon W. Coch inserted, and which had been previously counted for Daniel T. Dur-land. This is also corroborated by the testimony of one of Mr. Fullerton’s witnesses, Bodle, who remembered the ticket, although unable to say who found it.
So far as the number of witnesses is concerned,, the preponderance of testimony is undoubtedly upon the side of Mr. Durland. It may, indeed, be objected that this preponderance is in part created by the testimony of the inspector who is charged with the official delinquency, and of him who is charged to have aided him in his misconduct ; but on the other hand, not only are all the witnesses unim-peached, but they have all, with the exception of Mr. Stewart T. Durland, been called as witnesses on the part of Mr. Fullerton, and cannot therefore be deemed capable of an atten^t to escape censure by willful perjury.
The inspectors appear to have been unskilled in their duty, but *236 your committee see no reason to doubt their intention to perform that duty,- or the fact that it was substantially performed. ISTo attempt was made to prove that there was any actual error or fraud in the account, and the detection and announcement by Mr. Stewart Durland of an error which.had been made in favor of the party who may be reasonably supposed to have enlisted all his sympathies, is strong incidental evidence of good faith in the transaction.
Tour committee think that a charge which could nullify the votes of a whole district should be most clearly and uncontestably proven, and they feel it due to the officers attacked and the witnesses examined, to give a preference to that testimony which is affirmative in its character over that which is negative merely, and to adopt the conclusion which comports best with the integrity of all.
With such views, your committee feel bound to declare the allegation in respect to the canvass of votes by unauthorized persons not proven.
The testimony adduced to the remaining point proves that two ballots, having on them the name of Daniel Fullerton, were found in boxes other than .the Assembly box at the poll held in the first election district of the town of Minisink, and were not allowed to Mr. Fullerton. Ananias M. Carter and james Post were examined to prove that they both voted for Mr. Fullerton at that election, as member of Assembly, and they both testified to their'intention so to vote, and their belief that they did so vote.
' Mr. Carter declined however to say positively that he handed his vote to the inspector, and Post stated that he took the tickets from a man that he knew to be a whig, and did not examine them before voting.
The poll list was then produced, from which it appeared that neither of the last named witnesses was recorded as voting for the Assembly, and that five other persons were also recorded as having voted other tickets,' but not the Assembly ticket.
It was also proved that there was an excess of one ticket in the Assembly box in that district over the number shown by the poll list, and that a ticket in favor of Charles Durland was destroyed to remove that excess.
The above is believed by your committee to be a fair statement of the facts of this case, and unless your honorable body should deem proper to order the taking of testimony in regard to illegal voting, your committee recommend the adoption of the following resolution,
*237 Resolved, That Daniel Fullerton, is not entitled to a seat in this Assembly.
Resolved, That Daniel T. Durland is entitled to a seat in tbis Assembly, as a member from the third Assembly district, of the county of Wayne, and that he be admitted and sworn as such.
F. C. DININNY.
GEO. G. WATEES.
JAS. MONEOE.
E. MoINTOSIT.
0. EOBINSON.'
Assembly Documents, 1850, vol. 1, No. 67; see do. for petition, documents, testimony, &c., pages 11 to 53.
Five times the usual Number of the EbpoRT ordered peinted.
Mr. Ford offered for the consideration of the House a resolution in the words following, to wit:
Resolved, That five times the usual number of the report on elections, in relation to the contested seat in Orange county, and the-evidence presented to and taken by them be printed for the use of the House, and in the meantime that the report lay upon the table. • Mr. Speaker put the question whether the House would agree to so much thereof as relates to printing, and it was determined in the affirmative.
Mr. Speaker then put the question whether the House would agree to so much thereof as relates to laying upon the table, and it was determined in the affirmative.
Assembly Journal, 1850, page 355.
BOOKS, STATIONERY, &C., FURNISHED Mr. DüRLAND.
On motion of Mr. Fiske,
Resolved, That Mr. Durland be supplied with the same number of newspapers as are furnishéd to members of this House, also books, documents, knife, stationery, &c., to be paid for in the same manner, and all books and all other articles furnished members.
Assembly Journal, 1850, page 386.
*238 BePORT OF COMMITTEE TAKEN UP AND CONSIDERED, AND MOTION MADE TO RE-COMMIT TO COMMITTEE.
In Assembly, February 26, 1850.
Mr. Burroughs moved that the special order before the House be postponed until te-morrow at L2 o’clock M., for the purpose of taking up for consideration at this time the report and resolutions of the committee on privileges and elections, in relation to the claim of Daniel T. Durland to the seat occupied by Daniel Fullerton, from the third district of the county of Orange.
Mr. Speaker put the question whether the House would agree to the said motion of Mr, Burroughs, and it was determined in the affirmative.
Mr. L. Ward Smith offered for the consideration of the House a resolution in the words following, to wit:
Resol/oed, That the report and resolutions of the standing committee on privileges and elections, on the contested seat between Mr. Durland and Mr. Fullerton, be re-committed with instructions to take testimony in relation to rhe illegal votes alleged to have been given at said election. •
Assembly Journal, 1850, page 472.
CONSIDERATION POSTPONED UNTIL FOUR O’CLOCK.
Mr. Speaker announced the question to be on Mr. L. Ward Smith’s resolution to re-commit’the report and resolutions of the committee on privileges and elections, with instructions to take testimony as to illegal voting in the case of the contested election in the third district of the county of Orange.
Tlie Speaker put the question whether the House would agree to the said resolution, and it was determined in the negative.
Ayes, 44. Noes, 50.
Mr. Pruyn moved that the House do now adjourn.
Mr. Speaker put the question, and it was determined in the negative.
Ayes,'43. Noes, 50.
Mr. Lyon'called for the previous question.
Mr. McLean moved that the motion for the previous question be laid upon the table.
Mr. Speaker put the question, and it was determined in the negative.
Ayes, 44. Noes, 50.
*239 Mr. Wakeman moved that the House do now adjourn.
Mr. Speaker put the question, aud it was determined in the negative.
Ayes, 42. Noes, 50.-
ÍÍEPORT OF COMMITTEE ADOPTED. — Mr. DüRLAND AWARDED SEAT AND " Sworn in.
After efforts to adjourn, etc., Mr. Speaker announced the main question to be on the adoption of the resolutions reported by the committee on privileges and elections, which are as follows : ,
Resolved, That Daniel Fullerton is not entitled to a seat in this Assembly.
Resolved, That Daniel T. Durland is entitled to a seat in this Assembly as a member from the third district from the county of Orange, and that he be admitted and sworn as such. '
Mr. Speaker put the question whether the House would agree to the said resolutions..
The Clerk having gone through with the roll, proceeded to call the absentees, and on calling the name of Mr. Waters, lie arose and asked to be excused, giving his reasons therefor.
Mr. Speaker put the question whether the House would agree to excuse Mr. Waters, and it was determined in the affirmative.
The Clerk having concluded the call of absentees, the vote on the said resolution was determined in the affirmative.
Ayes, 50.' Noes, 38.
Mr. Ford moved that the vote just taken on said resolutions be reconsidered, and moved the previous question thereon.
Mr. Wakeman moved to lay the said motion of Mr. Ford on the table.
Mr. Speaker put the question whether the House-would agree to the said motion of Mr. Wakeman, and it was determined in the negative.
Mr. Speaker put the question whether the -House would agree to second the call for the previous question, and it was determined in the affirmative.
Mr. Speaker then put' the question, “ Shall the main question be now put?” and it was determined in the affirmative.
Mr. Speaker then announced the main question to be on Mr. Ford’s motion to reconsider.
Mr. Speaker then put the main question, it being whether the *240 House would agree to the said motion of Mr. Eord, and it was determined in the negative.
Mr. Daniel T. Durland then came forward and was duly sworn in hy the Speaker as a member of this House from the third Assembly district of the county of Orange.
Assembly Journal, 1850, pages 470 to 481, both inclusive. See also pages 483, 484.
An act to pay certain expenses of Daniel Fullerton and Daniel T. Durland.
Assembly Journal, 1850, pages 655 to 1359.